UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY BROWN AND MONIQUE BROWN, ET AL | CIVIL ACTION |
| VERSUS | NO:    09-2813 |
| JACK STRAIN, JR., ET AL | SECTION: "C" (5) |

**ORDER AND REASONS**

Plaintiffs Anthony and Monique Brown, individually and on behalf of their minor child Gavin Brown, bring Eighth and Fourteenth Amendment claims for deliberate indifference under 42 U.S.C. § 1983 against the following: Rodney J. Strain, Jr., Sheriff of St. Tammany Parish ("Sheriff Strain"); and Bryan Steinert, Wayne Wicker, and Julie Boynton, all Deputies of Sheriff Strain at the time of the events giving rise to the dispute. All Defendants are sued in both their personal and official capacities. Plaintiffs also asserts a pendant state-law claim for negligence against the same Defendants in the same capacities under La. Civ. Code art. 2315.

Before the Court is Defendant's Motion for Summary Judgment. (Rec. Doc. 32). Plaintiffs oppose the Motion as to Strain and Steinert only. (Rec. Doc. 64). Having reviewed the record, memoranda of counsel, and the law, the motion is GRANTED IN PART and DENIED IN PART for the following reasons.

**I. Factual Background**

On February 18, 2008, at approximately 10:12 p.m., Deputy Steinert stopped Anthony Brown was driving in Slidell, Louisiana. (Rec. Doc. 1 at 3). During the course of that stop, Mr. Brown allegedly consented to a search of his vehicle, which resulted in the discovery of a plastic bag with cocaine residue. *Id*. Mr. Brown and his two passengers, Billy Smith and Casey Lane, were

then arrested and placed in the back of Steinert's patrol car. *Id*. The three co-arrestees were left alone in the patrol car with the suggestion that they should discuss their situation amongst themselves. *Id.* However, the three were being monitored by a digital voice recorder, which Steinert had concealed in the car. *Id.*

While left alone in the police car, Mr. Brown was able to move his hands from behind his back and to swallow eight to nine grams of cocaine, or a quarter of an ounce, which Steinert had not discovered in his search of Mr. Brown. *Id*. Before leaving the scene of the traffic stop, Steinert noticed that Mr. Brown had moved his cuffs to the front of his body and ordered Mr. Brown out of the car so that he could reset the cuffs. *Id.*

At around 11:00 p.m., Steinert took the three suspects to the Slidell Complex where he then listened to the audio recording he made of the suspects' conversation. *Id*. In the course of listening to that conversation Steinert learned that one of the suspects had swallowed something. (Rec. Doc. 64 at 8). While Steinert maintains that he only heard that someone had swallowed a Soma pill, (Rec. Doc. 32-3 at 10), Plaintiffs maintain that the audio recordings indicate that one of the suspects was told to "swallow it," without specifying the substance to be swallowed (Rec. Doc. 1 at 3). Steinert took no steps to inquire if any of the suspects had ingested any substance or if they needed medical attention. However, he did request that Deputy Boynton conduct a more through search of Casey Lane based on information he learned from the recording. (Rec. Doc. 1 at 4). That search revealed that Mrs. Lane had concealed three narcotic pills in her underwear. *Id*.

At around 11:40 p.m., Steinert began to drive the three suspects to the Covington jail. (Rec. Doc. 1 at 4). Plaintiffs maintain that during this 80-minute drive Mrs. Lane and Mr. Smith informed Deputy Steinert that Mr. Brown had swallowed a quarter of an ounce of cocaine and was looking very ill and needed medical attention. (Rec. Doc. 64 at 9-11). They also assert that they informed Deputy Steinert that based on their personal knowledge of the Covington jail, the jail officials would

2

not admit Mr. Brown in his current medical condition. *Id.* at 10. Deputy Steinert is claimed to have responded to these warnings by rolling down the window and suggesting that some fresh air was all that Mr. Brown required and that they were close to the jail in any event. *Id.* There are disputes as to whether the suspects actually warned Deputy Steinert and if they did offer such a warning, when it was offered. (Rec. Doc. 32-3 at 14-15). However, inspection of the Covington jail surveillance video does appear to reveal that Steinert's window was at least partially rolled down when his vehicle pulled into the sally port. (Rec. Doc. 32 exhibit "F").

After arriving at the Covington jail at 1:44 a.m., Steinert went to remove Mr. Brown from the police car and noticed that Mr. Brown was having difficultly balancing himself.[1] (Rec. Doc. 64-2 at 10). At that point Steinert began to waving for assistance. *Id.* Shortly thereafter, Mr. Brown collapsed onto the ground and began convulsing. *Id.* Medical assistance was requested from both the jail and emergency services and some of the jail's staff nurses came within three minutes to take Mr. Brown's vital signs. *Id.*; *see also* (Rec. Doc. 32 exhibit "F"). Once the nurses determined that Mr. Brown needed medical assistance they refused to admit him to the jail and ceased providing any medical care because he was not formally in their custody. (Rec. Doc. 64 at 24). It is undisputed that the jail had the required medical equipment on site to begin treatment of Mr. Brown's cocaine intoxication. *Id.* Emergency services arrived 12 minutes after Mr. Brown had collapsed and took a further four minutes to load Mr. Brown into the ambulance. (Rec. Doc. 32 exhibit "F"). After waiting a further 14 minutes in the jail's driveway, the ambulance finally began to take Mr. Brown to a nearby hospital. *Id.* All in all it took 25 minutes from the moment Mr. Brown collapsed until he was *en route* to a hospital. *Id.* On the drive to the hospital, Mr. Brown had two heart attacks and

---

[1] Unlike most § 1983 cases, this case affords the Court the benefit of a video documenting a significant amount of the events in question. (Rec. Doc. 32, Exhibit "F"). As that video contains more detail than this Order, any interested reader should view the video to better understand the events that occurred at the Covington jail in the early morning of February 19, 2008.

as a result suffered anoxic encephalopathy, causing him permanent brain damage. (Rec. Doc. 64 at 13). Plaintiffs have provided medical evidence that if Mr. Brown had arrived at the hospital 10 minutes earlier he would have likely suffered no permanent brain damage. *Id.* at 14.

In response to the above events, Plaintiffs Anthony and Monique Brown, individually and on behalf of their minor child Gavin Brown, filed claims for deliberate indifference under 42 U.S.C. § 1983 alleging that Anthony Brown's Eighth and Fourteenth Amendment rights were violated by the Defendants' failure to provide Mr. Brown with adequate medical care. (Rec. Doc. 1).

### *A. Defendants' Arguments for Summary Judgment*

Defendants have moved for summary judgment of on a variety of grounds. (Rec. Doc. 32-2). First, Defendants argue that Sheriff Strain is entitled to summary judgment on Plaintiffs' § 1983 claims because the Sheriff was not personally involved in Mr. Brown's arrest and cannot be held liable under a theory of respondeat superior. Id. at 5. Furthermore, Defendants submit that the Plaintiffs have provided no evidence that the Sheriff is liable for Mr. Brown's injuries as a result of any Sheriff's Department policy, regulation or custom, which would be required for the Sheriff to be held liable in the absence of his personal involvement. *Id.*

Second, Defendants argue that Defendant Julie Boynton is entitled to summary judgment because she had minimal involvement with the challenged events; and to the extent that she was involved, she only conducted a pat-down search of Casey Lane, which was not performed with deliberate indifference to Mr. Brown's civil rights. *Id.* at 6.

Third, Defendants argue that neither Deputy Wicker nor Deputy Steinert violated Mr. Brown's civil rights by acting with deliberate indifference towards a known risk of harm to Mr. Brown. *Id.* at 7. Relying on *Tamez v. Matheny*, 589 F.3d 764 (5th Cir. 2009), Defendants argue that for Plaintiffs to survive summary judgment they must show that the Defendants were subjectively

4

aware of the substantial risk of serious harm to Mr. Brown and through their actions intended that harm to occur. (Rec. Doc. 32-2 at 8). Defendants argue that since Deputies Wicker and Steinert had no knowledge that Mr. Brown needed medical attention until Mr. Brown was already at the Covington jail, they were not subjectively aware of the risk to Mr. Brown and therefore did not act with deliberate indifference to Mr. Brown's rights. *Id.* at 10. In the alternative, Defendants argue that even if Billy Smith and Casey Lane had informed Deputy Steinert that Mr. Brown had consumed a large amount of cocaine and needed medical attention, Deputy Steinert had no reason to believe them since they both had extensive criminal records. *Id.* at 16.

Fourth, Defendants argue they are entitled to qualified immunity because none of their actions were objectively unreasonable in light of any clearly established rights that Mr. Brown may have had. *Id.* at 18.

Fifth, Defendants argue that they are not liable under the Louisiana negligence law because they are entitled to qualified immunity for any of their discretionary acts, and Deputy Steinert's decision to disbelieve Smith and Lane was discretionary. *Id.* at 20. Moreover, Defendants argue that they were not the cause of Mr. Brown's injury because he swallowed the cocaine of his own accord. *Id.* at 22. Defendants finally argue that even if they are not entitled to summary judgment on Plaintiffs' state law claims, this Court should not retain supplemental jurisdiction over Plaintiffs' remaining state law claims after it grants summary judgment on Plaintiffs' federal claims. *Id.* at 21.

## B. *Plaintiffs' Arguments against Summary Judgment*

Plaintiffs agree that Deputies Wicker and Boynton are not at fault for Mr. Brown's injuries and therefore do not oppose their dismissal as parties to this action. (Rec. Doc. 64 at 1). However, Plaintiffs continue to maintain that Deputy Steinert was aware of the medical emergency facing Mr. Brown but refused to take him to a hospital even though he was aware that the Covington jail would

not admit him in his current condition. *Id.* at 3. Plaintiffs submit that this behavior is evidence that Deputy Steinert was deliberately indifferent to Mr. Brown's clearly established rights to adequate medical care while held as a pretrial detainee. *Id.* Furthermore, Plaintiffs argue that Sheriff Strain's relevant policies were poorly-defined and not understood by his personnel, which created a condition of confinement that failed to provide for the highly-predictable medical needs of an arrestee suffering a drug overdose. *Id.*

Specifically, Plaintiffs argue that as a result of the tape recording of the suspects' conversation in the back of his patrol car, Steinert knew that someone had swallowed something while in his patrol car. *Id.* at 8. Nevertheless, when he was informed by Smith and Lane that Mr. Brown had swallowed eight grams of cocaine and needed to go to a hospital, Steinert merely rolled down a window to allow Mr. Brown some fresh air. *Id.* at 16. Plaintiffs argue that Steinert's refusal to seek medical assistance for Mr. Brown after he learned of Mr. Brown's medical condition, was a violation of St. Tammany Parish Sheriff's Office policy, and done in deliberate indifference to Mr. Brown's right to adequate medical care. *Id.* at 9. Plaintiffs further argue that Steinert's decision to continue to the jail was deliberately indifferent to Mr. Brown's rights because Steinert was aware of the jail's policy of refusing admission to anyone with preexisting medical conditions. *Id.* at 10. Finally, Plaintiffs point out that when the jail refused to accept Mr. Brown on medical grounds, Steinert failed to follow standard procedure, which would involve him driving Mr. Brown to the hospital. *Id.* at 10. Instead, Steinert merely called emergency services and then stood around the Covington jail sally port for 12 minutes while Mr. Brown convulsed face down on the concrete floor waiting for an ambulance. *Id.* at 15.

Plaintiffs also argue that Steinert is not entitled to qualified immunity because his refusal to drive Mr. Brown to a hospital was objectively unreasonable in light of the clearly established rights of pretrial detainees to adequate medical care under the Fourteenth Amendment. *Id.* at 4, 16.

Plaintiffs argue that Steinert's belief that Smith and Lane were lying in order to avoid going to jail was unreasonable because a stop at the hospital would in no way prevent them from being taken to jail. *Id.* at 17.

Regarding Sheriff Strain, Plaintiffs argue that the medical care provided to pretrial detainees at the Covington jail does not meet basic human needs and is not reasonably related to a legitimate government interest. *Id.* at 19. Plaintiffs submit that based on the jail's refusal to provide emergency care to Mr. Brown, a finder of fact could infer that the jail had a de facto policy that inadequately treated detainees suffering from overdose. *Id.* at 20. Moreover, Plaintiffs assert that Sheriff Strain failed to train the medical personnel at the jail in how to recognize a drug overdose or respond in the event of an emergency involving a prisoner not yet in the jail's custody. *Id.* at 24. Plaintiffs additionally argue that the failure to train the jail's medical staff was not reasonably related to a legitimate government interest because the jail had the relevant medical equipment to provide emergency services and Sheriff Strain believed that they were in fact trained to provide emergency medical care to non-custodial detainees. *Id.* In addition Sheriff Strain was under the impression that the jail's medical staff was trained to recognize and treat overdoses. *Id.* Plaintiffs argue that Sheriff Strain's failure to train his employees in how to react to drug overdoses amounts to deliberate indifference to Mr. Brown's constitutional rights. *Id.* at 28.

Finally, Plaintiffs argue that Defendants are not entitled to qualified immunity from state law negligence claims because Steinert's actions were not related to public policy. *Id.* at 31. Furthermore, under Louisiana law a parish sheriff is liable in his official capacity for the torts of his deputies committed in the course and scope of their employment. *Id.*

## II. Applicable Law

### A. Standard of Review

7

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### B. The Federal Claim under 42 U.S.C. § 1983

Title 42, Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

8

equity, or other proper proceeding for redress....

To prevail on a § 1983 claim, the plaintiff must show that "the conduct complained of was committed by a person [or persons] acting under color of state law and ... [that] this conduct deprived [the plaintiff] of rights, privileges or immunities secured by the constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Actions taken under color of state law for purposes of § 1983 fall into two categories: those performed in a personal capacity and those performed in an official capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent ." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). To establish liability against a government official in his or her "official capacity," a § 1983 plaintiff must show that a policy or custom formulated and implemented by the official "must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 28 (1991). That is, "the plaintiff must show that the municipality has a policy or custom that caused his injury." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir.2007). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, TX*, 981 F.2d 237, 245 (5th Cir.1993). Rather, a plaintiff must identify the policy or custom that was adopted or maintained with *objective* deliberate indifference to his constitutional rights. *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997).

Personal capacity claims are different and require specific allegations of misconduct by some officials that give rise to a constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir.2002). "Personal involvement is an essential element of" this cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983). So, a supervisor may not be held personally liable under § 1983 based on a theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987). However, a supervisor may be liable in their official capacity if: (1) they failed to train or supervise the officers

9

involved; (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001).

For pretrial detainees or prisoners to assert valid § 1983 claims under the Eighth or Fourteenth Amendments they must challenge either their "conditions of confinement" or the "episodic acts or omissions" of their confiners. *Hare v. City of Corinth, MS*, 74 F.3d 633, 643 (5th Cir. 1996). When a pretrial detainee or prisoner challenges the "episodic act or omission" of his confiner, the plaintiff must show that the confiner acted with *subjective* deliberate indifference to the plaintiff's rights. *Tamez v. Matheny*, 589 F.3d 764, 770 (5th Cir. 2009). To show that an official's "episodic act or omission" was in deliberate indifference to the plaintiff's rights, the plaintiff must show: (1) that the defendant had subjective knowledge of facts that would support an inference of a substantial risk of serious harm; (2) that the defendant actually drew that inference; and (3) the defendant's response to the risk indicates that the defendant subjectively intended that harm to occur. *Id.* However, the defendant's subjective knowledge and intent may be inferred from the fact that the risk of harm was obvious. *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 256 (5th Cir. 2005).

On the other hand, constitutional attacks on the "conditions of confinement" do not involve questions of the official's state of mind. *Hare v. City of Corinth, MS*, 74 F.3d at 644. As a result, "if a restriction or condition is not reasonably related to a legitimate [governmental] goal...a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. at 640 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). But for this lower test to apply, "a jailer's act or omission must implement a rule or restriction or otherwise demonstrate the existence of an identifiable intended condition or

10

practice." *Hare*, 74 F.3d at 645. If a plaintiff cannot identify an established rule, then he must show that an official's acts or omissions "were sufficiently extended or pervasive...to prove an intended condition or practice." *Id*.

### C. Qualified Immunity under 42 U.S.C. 1983

The doctrine of qualified immunity serves to shield government officials from civil liability for their performance of discretionary functions so long as their performance was objectively reasonable in light of clearly established law. *Thompson v. Upshur County, TX*, 245 F.3d 447, 456 (5th Cir. 2001). The first step in the analysis is to determine whether the plaintiff has alleged a violation of a clearly established federal right. *Id.* at 457. "Clearly established" means that the right must be sufficiently clear that reasonable officials would understand that they were violating that right through their actions. *Id.*

Assuming that the plaintiff has alleged a violation of a clearly established right, the second step in the qualified immunity analysis is whether the defendant's conduct was objectively reasonable in light of clearly established law. *Id*. "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated [the plaintiff's rights]." *Id.*

### D. Qualified Immunity Under Louisiana Law

La.Rev.Stat. 9:2798.1(B), provides:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

The Louisiana Supreme Court has interpreted this statutory provision to only apply when the

government acts out of public policy considerations at the policy-making or ministerial level. *Gregor v. Argenot Great Central Ins. Co.*, 851 So.2d 959, 966-68 (La. 5/20/03). Negligent actions at the operational level are not entitled to qualified immunity. *Id.*

### III. Analysis

As neither party continues to maintain that Defendants Wicker or Boynton violated Mr. Brown's rights, all claims against them are dismissed.

*A. The Federal Claim*

    1. Deputy Steinert

Plaintiffs have brought claims against Deputy Steinert in both his official and personal capacities. (Rec. Doc. 1). However, in this case it seems the two theories are at cross purposes. As stated above, in order to establish liability against an officer in his official capacity, a plaintiff must show that a "municipality has a policy or custom that caused his injury." *Parm*, 513 F.3d at 142. So for Deputy Steinert to be liable in his official capacity, Plaintiffs must show that Steinert was merely implementing one of the Sheriff's policies or customs. In this case Steinert is accused of driving Mr. Brown directly to the Covington jail while knowing that Mr. Brown needed medical attention and that the jail would not provide such medical assistance. However, if these allegations are true, Steinert violated all of the Sheriff's relevant policies and customs regarding the handling of arrestees who require medical attention. (Rec. Doc. 64 at 9). To the extent that Mr. Brown's injuries were caused by Deputy Steinert's violations of Sheriff Strain's official policies and customs, Steinert is not liable for those injuries in his official capacity.

Plaintiffs' personal capacity claims against Deputy Steinert are a different matter. It is clear that Plaintiffs assert due process claims against Steinert based on Steinert's "episodic acts and

12

omissions" because their claims are based on Steinert's refusal to follow official policy. *Hare v. City of Corinth, MS*, 74 F.3d 633, 645 (5th Cir. 1996). As a result the appropriate legal standard to apply is whether Deputy Steinert acted with deliberate indifference to Mr. Brown's rights. *Id.* at 643. As stated earlier, for Plaintiffs to demonstrate Steinert's deliberate indifference to Mr. Brown's rights Plaintiffs must show: (1) that Steinert had subjective knowledge of facts that would support an inference of a substantial risk of serious harm; (2) that Steinert actually drew that inference; and (3) Steinert's response to the risk indicates that he subjectively intended that harm to occur. *Tamez v. Matheny*, 589 F.3d 764, 770 (5th Cir. 2009). However, Steinert's subjective knowledge and intent may be inferred from the fact that the risk of harm was obvious. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005).

Plaintiffs have submitted sufficient evidence for a reasonable jury to find that Deputy Steinert acted with deliberate indifference to Mr. Brown's rights. First, they have established that a detainee suffering from an acute medical emergency is constitutionally entitled to prompt medical care. Second, they have established that Mr. Brown was in fact suffering from an acute medical emergency. The only question that remains unresolved is whether Deputy Steinert was aware that Mr. Brown was suffering a medical emergency at some point during the drive to the Covington jail and ignored that emergency by continuing to the jail.

The evidence Plaintiffs provide establishes at least a genuine issue of material fact as to whether Steinert was aware that Mr. Brown had swallowed a large amount of cocaine and needed urgent medical care. First, Steinert had initiated Mr. Brown's arrest based on the discovery of an empty bag of cocaine. Second, Steinert was aware that Mr. Brown had moved his hands to his front for some reason. Third, the recording Steinert listened to at the Slidell Complex suggested that one of the three arrestees had swallowed something. Fourth, Plaintiffs submit that they actually told Steinert that Mr. Brown had swallowed a quarter-ounce of cocaine and needed immediate medical

13

attention.  Fifth, Plaintiffs have produced numerous depositions that indicate that Sheriff Strain's deputies knew that the Covington jail would refuse  medical treatment of arrestees that had pre-existing illnesses or injuries.  Finally, the video of the Covington jail shows quite clearly that Mr. Brown was already in a medical emergency upon arrival at the sally port, so it is unlikely that he was not exhibiting some symptoms of overdose during the ride to the jail.  Based on this evidence a rational jury could conclude that Steinert had drawn the inference that Mr. Brown needed to be taken to the hospital and that he intended on denying Mr. Brown the care he required by continuing to the jail, where Mr. Brown would not receive treatment.

Defendants claim that *Tamez* compels this Court to find that Steinert did not act with deliberate indifference.  (Rec. Doc. 32-3 at 2).  However, in *Tamez* the Fifth Circuit held that the officers in question had not acted with deliberate indifference because they had no direct knowledge that the detainee had swallowed cocaine.  *Tamez,* 589 F.3d at 771.  All the officers knew was that the county jail refused to accept Tamez without a medical clearance because his pupils were dilated, and medical clearances were required for almost any medical condition, including colds.  *Id.* Moreover, Tamez was completely lucid the entire time and did not complain of any pain at all.  *Id.* at 768.  But as soon as Tamez did complain of pain, he was taken to the hospital.  *Id.*

It is therefore clear that this care is not *Tamez*.  Interpreting the facts in the light most favorable to the nonmoving party, Deputy Steinert knew that Mr. Brown had swallowed eight grams of cocaine and that he needed immediate medical attention.  Rather than follow St. Tammany Parish Sheriff's Office protocol by taking Mr. Brown to a hospital, Steinert rolled down the window and continued the journey to the Covington jail where he knew Mr. Brown would not receive treatment. In *Tamez* the Fifth Circuit held that if  the detectives were told by the jail's nurse to take Tamez to the hospital immediately then the case would have turned out differently.  *Tamez*, 589 F.3d at 771.

Considering all of the above this Court finds that there is a genuine issue of material fact

14

regarding whether Deputy Steinert had the subjective knowledge of Mr. Brown's medical situation. If Steinert did know that Mr. Brown had swallowed cocaine and was in need of medical attention, then he was required by the Sheriff's policy to take Mr. Brown to a hospital. (Rec. Doc. 64 at 9). The refusal to do so would amount to deliberate indifference to Mr. Brown's right to medical care because Steinert would have deliberately ignored the obvious risk to Mr. Brown. *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 256 (5th Cir. 2005). However, under *Tamez*, if Steinert did not know that Mr. Brown had swallowed cocaine and was in need of immediate medical attention, then his actions were not deliberately indifferent to Mr. Brown's rights. Ultimately, Deputy Steinert's state of mind is a question for the fact-finder, and based on the evidence presented, a rational jury could find that Steinert knew that Mr. Brown had swallowed a large quantity of cocaine and decided to drive to the jail anyway. As a result, Steinert is not entitled to summary judgment on Plaintiffs' personal capacity claim against him.

Defendants' arguments that Steinert is entitled to qualified immunity does not change this conclusion because the question of immunity will also turn on the fact issue of whether Steinert had knowledge that Mr. Brown was in urgent need of medical attention. It is undisputed that Mr. Brown, as a detainee, had a clearly established constitutional right to prompt medical care when suffering a medical emergency. If Steinert had the knowledge that Mr. Brown needed urgent medical care, then he was violating the Sheriff's clear instructions to take ill detainees to the hospital before taking them to jail. Since Sheriff Strain's policy safeguards these very rights to prompt medical treatment, Steinert's refusal to provide Mr. Brown with medical care would be objectively unreasonable in light of established law. Conversely, if Steinert only learned that Mr. Brown was ill upon arrival at the Covington jail, then he might be entitled to qualified immunity because his actions after that point were arguably not objectively unreasonable under the circumstances.

2. Sheriff Strain

While Plaintiffs assert claims against Sheriff Strain in both his personal and official capacities, they have provided no evidence that he had any personal involvement with the events in question. Since there is no evidence of Sheriff Strain's personal involvement in Mr. Brown's arrest and there is no vicarious liability under § 1983, the personal capacity claims against Sheriff Strain must be dismissed. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983).

Plaintiffs assert two claims against Sheriff Strain in his official capacity: first, that he failed to train his personnel in how to recognize and handle suspects that are at risk for a drug overdose, and second, that the conditions of confinement at the Covington jail amounted to unconstitutional punishment because the jail's official policy of denying Mr. Brown emergency medical assistance was not reasonably related to a legitimate government interest. (Rec. Doc. 1 at 6-7).

In order for Plaintiffs to prevail on their failure to train claim, they would have to establish both that the failure to train caused Mr. Brown's injury and that the failure to train was done with deliberate indifference to Mr. Brown's rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). In order to show that the failure to train amounted to deliberate indifference the Plaintiffs need to produce some evidence that either there was a high probability that the failure to train would lead to Mr. Brown's specific injury or that Sheriff Strain was responsible for a pattern of inadequate training sufficient to support the inference that he was deliberately indifferent to detainees' rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001).

However, Plaintiffs have provided no evidence of a pattern of inadequate training that would support a conclusion that Sheriff Strain was deliberately indifferent to Mr. Brown's rights. Based on the evidence submitted thus far, it appears that Deputy Steinert was trained to take detainees who required medical attention to a hospital. (Rec. Doc. 32-5 at 65). Assuming the Plaintiffs' allegations are true, Deputy Steinert refused to follow his training, which led to Mr. Brown's injuries.

16

Moreover, it is not clear that additional training in recognizing drug overdoses would have changed anything, for there is no evidence that Mr. Brown exhibited any symptoms of cocaine overdose before the journey to the Covington jail began. (Rec. Doc. 32-3 at 11-14). Since Plaintiffs have not shown that Sheriff Strain's training was deliberately indifferent to Mr. Brown's rights, Plaintiffs' claims for failure to train are dismissed.[2]

The second argument that Plaintiffs assert is that the Covington jail's official policy of denying Mr. Brown emergency medical assistance was not reasonably related to a legitimate government interest and therefore Mr. Brown's conditions of confinement amounted to unconstitutional punishment. (Rec. Doc. 64 at 2). Since this argument challenges the general policies of the Covington jail, those policies must be scrutinized to see if they are reasonably related to a legitimate government purpose. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (applying the legitimate government purpose test to a plaintiff's challenge to a prison's medical care policy). Under the legitimate government purpose test, a policy that imposes a condition of confinement that is arbitrary or purposeless is considered unconstitutional punishment that may not be imposed on detainees. *Id.* at 454.

Here Plaintiffs have produced evidence that the Covington jail's official policy is to refuse to provide any emergency medical services to a detainee unless that detainee is in the jail's custody. (Rec. Doc. 64 at 24). The rationale provided for this policy is that the jail is not a fully-equipped medical facility and therefore refuses custody of people who need more adequate care. *Id*. But that rationale does not explain why the jail should refuse to provide emergency medical care to a detainee on the verge of death in the jail's sally port. Obviously, a detainee in such a condition is

---

[2]While the Plaintiffs' submissions are not clear on exactly who Sheriff Strain failed to train, to the extent that Plaintiffs have asserted a failure to train claim regarding the medical staff at the Covington jail, this Court finds that they have not provided sufficient evidence that they were inadequately trained to handle a case like Mr. Brown's.

17

supposed to be taken to the hospital under Sheriff Strain's own policies. However, it is still possible that a detainee might arrive at the jail in a critical medical condition. It is one thing for a jail to refuse to admit such a detainee because of his medical condition, but it is something else to leave him without any medical attention at all. Even the jail in the *Tamez* case recognized the difference, as the nurse testified that if Tamez had not lied about swallowing cocaine he would have placed him in isolation and treated him according to the county's drug and alcohol protocol. Indeed even Sheriff Strain was under the belief that the Covington jail medical team would provide emergency medical services to non-custodial detainees in a situation like Mr. Brown's. (Rec. Doc. 64 at 24). Furthermore, it is undisputed that the jail had the required medical equipment to provide Mr. Brown with emergency treatment. *Id*. It is further undisputed that since Mr. Brown was arrested by Deputy Steinert, he was under the custody of Sheriff Strain. It is also undisputed that if Mr. Brown had been admitted to the Covington jail, he would still be under the custody of Sheriff Strain. A rational jury could find the Covington jail's policy of refusing emergency medical care to detainees in Sheriff Strain's custody to be unconstitutional. Therefore summary judgment is inappropriate for Plaintiffs' condition of confinement claim.

### B. State Claims

Defendants have sought summary judgment on Plaintiffs' state tort claims based on Louisiana's qualified immunity statute. However, the Louisiana Supreme Court has clearly held that such immunity only applies to ministerial level decisions, not mere operational negligence. *Gregor v. Argenot Great Central Ins. Co.*, 851 So.2d 959, 966-68 (La. 5/20/03). Moreover, under Louisiana law a parish sheriff is liable for the torts of his deputies committed in the course and scope of their employment. *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669 (La. 1981). Since Deputy Steinert's actions were clearly at the operational level and not related to public policy, he is not

entitled to qualified immunity under Louisiana law.  It is also clear that Deputy Steinert's actions were within the scope of his employment, therefore Sheriff Strain may be vicariously liable.

### IV.  Conclusion

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Rec. Doc. 32) is GRANTED as to the claims against Defendants Wicker and Boynton, the federal claims against Sheriff Strain in his personal capacity, the federal claims against Defendant Steinert in his official capacity, and the federal claim against Sheriff Strain for his failure to train.

IT IS FURTHER ORDERED that Defendants Motion for Summary Judgment (Rec. Doc. 32) is DENIED as to all remaining claims.

New Orleans, Louisiana, this 13th day of December, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**